IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | ) | Case No. 12-70166-JAD |
| | ) | |
| BOBBI JO S. DIVELY, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Related to Doc. #45 |
| ----------------------------------------- | X | |
| | ) | |
| JAMES R. WALSH, ESQUIRE, | ) | |
| Trustee of the | ) | |
| Bankruptcy Estate of | ) | |
| Bobbi Jo S. Dively, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| - v - | ) | |
| | ) | |
| BOBBI JO S. DIVELY, | ) | |
| SEAN DIVELY, FEDEX | ) | |
| CORPORATION, and | ) | |
| HEWITT ASSOCIATES, | ) | |
| LLC, | ) | |
| | ) | |
| Respondents. | ) | |
| ----------------------------------------- | X | |

**MEMORANDUM OPINION**

The matter before the Court is a *Motion for Authority of Chapter 7 Trustee to Execute a Qualified Domestic Relations Order to Effectuate Property Settlement Agreement* (the "Motion to Execute QDRO"). The Motion to Execute QDRO is a core proceeding over which this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157(b)(2)(A), 157(b)(2)(E), 157(b)(2)(O) and 1334(b).

For the reasons set forth below, the Court shall enter an order which essentially defers ruling on the relief set forth in the motion until such time as the

00014325

Chapter 7 Trustee demonstrates to the Court that the bankruptcy trustee has appropriate standing to recover the pension interests at issue.

## I.

As an initial matter, neither the debtor, the debtor's ex-spouse nor any creditor has lodged an objection to the trustee's Motion to Execute QDRO. However, FedEx Corporation ("FedEx"), who is the employer of the debtor's ex-spouse, has lodged an objection.

Specifically, FedEx (as plan administrator of the FedEx Corporation Employee's Pension Plan) has interposed two objections to the relief requested. First, FedEx contends that the relief is not warranted because the trustee is not an "alternate payee," and therefore not a "beneficiary" under the FedEx pension plan pursuant to Sections 1056(d)(3)(j) and (k) of the Employee Retirement Income Security Act of 1974 ("ERISA"). <u>See</u> 29 U.S.C. §§ 1056(d)(3)(j) and (k). According to FedEx, since the bankruptcy trustee is neither an "alternate payee" nor a "beneficiary" as such terms are used in ERISA, it is alleged that the chapter 7 trustee is not permitted to seek the issuance of a QDRO. Second, FedEx contends that the undistributed funds of her ex-spouse's ERISA qualified pension plan are not property of the estate. Therefore, according to FedEx, those funds are beyond the reach of the trustee in bankruptcy.

## II.

Preliminarily, the Court does have some concern over the standing of FedEx to interject itself into this bankruptcy proceeding. The Court has this concern

because the record reflects that FedEx is not a creditor of the debtor; nor does FedEx own the pension funds at issue. Rather, FedEx is merely a plan administrator, with no pecuniary interest in the outcome of these proceedings. As such, it is questionable as to whether FedEx may have standing to object to the trustee's Motion to Execute QDRO. See In re Global Indus. Tech., Inc., 645 F.3d 201, 210 (3d Cir. 2011))("party-in-interest" is person or entity that alleges a "specific, 'identifiable trifle' of injury" or a person or entity that has a "personal stake in the outcome of [the] litigation")(citations omitted).

Regardless of whether FedEx has standing, this Court has elected to examine the trustee's motion even though neither the debtor nor any creditor has objected to the relief requested. See In re Jasinski, 406 B.R. 653, 656 (Bankr. W.D. Pa. 2009)(court examined merits of underlying relief even though movant requested a default judgment for failure of parties-in-interest to object).

### III.

During the course of examining the merits of the motion, the Court observed that the United States District Court for the Western District of Pennsylvania recently rendered its decision in the case of Urmann v. Walsh (In re Urmann), __ B.R. __, C.A. No. 14-718, 2014 WL 5440736 (W.D. Pa. October 24, 2014).

In In re Urmann, the United States District Court affirmed the Bankruptcy Court's approval of a settlement that provided for the liquidation and remittance of the debtor's marital interest in a 401(k) plan. In reaching the decision that the Bankruptcy Court did not abuse its discretion in approving the settlement at

issue, the District Court in Urmann addressed the trustee's request for authority to seek a QDRO. In this regard, the District Court wrote:

> Appellant argues that the Bankruptcy Court abused its discretion in approving the settlement with the Trustee being named as the direct payee under a QDRO . . . Appellant contends that pursuant to ERISA, only a spouse, former spouse, child or other dependent of a plan participant can be named as an alternate payee. See 29 U.S.C. § 1056(d)(3)(K). Conversely, the Trustee maintains that under 11 U.S.C. § 541, he necessarily "steps into the shoes" of the debtor as it relates to any and all interests that the debtor possessed as of the bankruptcy filing, including the debtor's claim for equitable distribution, and can therefore appropriately be designated as an alternate payee. . . . The Court is of the view that the Trustee has the better side of the argument.
>
> Pursuant to § 541, the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement" of the bankruptcy. 11 U.S.C. § 541(a); see also O'Dowd v. Trueger, 233 F.3d 197, 202 (3d Cir. 2000). These legal and equitable interests include causes of action. 3 COLLIER ON BANKRUPTCY ¶ 323.02[1](15th rev. ed 2001); accord O'Dowd, 233 F.3d at 202-03. A Chapter 7 trustee is charged with the duty to "collect and reduce to money the property of the estate for which such trustee serves and close such estate as expeditiously as is compatible with the best interests of parties in interest ...." 11 U.S.C. § 704(a)(1); Martin, 91 F.3d at 394. "[I]n actions brought by the trustee as successor to the debtor's interest under section 541, the 'trustee stands in the shoes of the debtor and can only assert those causes of action possessed by the debtor.' [Conversely], [t]he trustee is, of course, subject to the same defenses as could have been asserted by the defendant had the action been instituted by the debtor.'" Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., 267 F.3d 340, 356 (3d Cir. 2001) (quoting Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 885 F.2d 1149, 1154 (3d Cir.1989)). The Trustee here stepped into the shoes of the Appellant in settling the equitable distribution claim. Faced with an estranged spouse and a consistently uncooperative debtor who failed and refused to execute the necessary documents (findings the Appellant does not dispute), the Bankruptcy Court appropriately exercised its discretion in finding that the Trustee would have a greater chance of collection of the estate assets if the Trustee was named as a direct payee in the QDRO. . . . To find

otherwise would result in an additional litigation burden on the Trustee to collect the pension, running counter to the Trustee's duty to fulfill his statutory duties expeditiously. Accordingly, the Court finds no abuse of discretion with respect to this Martin factor.

In re Urmann, 2014 WL 5440736 at *8 (footnote omitted).

The reasoning in Urmann is persuasive, and this Court finds no reason to deviate from the holding of the United States District Court. That is, a trustee in bankruptcy may "stand in the shoes" of the debtor pursuant to 11 U.S.C. § 541, and assert the debtor's rights to pursue a QDRO (to the extent that the retirement funds at issue constitute property of the bankruptcy estate).

This Court's conclusion is particularly acute since ERISA itself provides that the provisions of ERISA shall not be "construed to alter, amend, modify, invalidate, impair, or supercede any law of the United States ...." See 29 U.S.C. § 1144(d). A plain reading of the phrase "any law of the United States" as used in Section 1144(d) of ERISA includes Sections 323, 541 and 704 of the Bankruptcy Code. See 11 U.S.C. §§ 323,[1] 541[2] and 704.[3]

---

[1] Section 323 of the Bankruptcy Code states that:

(a) The trustee in a case under this title is the representative of the estate.
(b) The trustee in a case under this title has capacity to sue and be sued.

See 11 U.S.C. § 323.

[2] Section 541 of the Bankruptcy Code states, in relevant part, that:

(a) The commencement of a case under . . . this title creates an estate. Such estate is comprised of all of the following property, wherever located and by whomever held:
(1) Except as provided in subsection (b) and (c)(2) of this section, all legal or

(continued...)

When read together, these statutes provide that: (1) the trustee succeeds to the debtor's legal and equitable interests as a general matter (including any of the debtor's non-exempt rights under ERISA), see 11 U.S.C. § 541(a)(1); (2) the trustee has a duty to liquidate assets of the estate for the benefit of creditors (which includes enforcing those non-exempt rights and interests that the debtor had as of the commencement of the bankruptcy case), see 11 U.S.C. § 704(a)(1); and (3) the trustee may bring appropriate legal actions in a court of competent jurisdiction if necessary to liquidate assets of the bankruptcy estate. See 11U.S.C. § 323.

As can be seen by these provisions of the Bankruptcy Code, the fact that a bankruptcy trustee is not specifically identified as an "alternate payee" or "beneficiary" in ERISA is of no moment. This is because the Bankruptcy Code fills in the gap complained of by FedEx, and Section 1144(d) of ERISA preserves the ability of the Bankruptcy Code to operate in this fashion. Accordingly, the trustee

---

[2](...continued)
equitable interests of the debtor in property as of the commencement of the case.

See 11 U.S.C. § 541(a)(1).

[3] Section 704 of the Bankruptcy Code states, in relevant part, that:

(a) The trustee shall–

> (1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest; . . .

See 11 U.S.C. § 704(a)(1).

seeking the issuance of a QDRO is consistent with the statutes referenced above.

In addition, the phrase "any law of the United States" as used in Section 1144(d) of ERISA also includes 11 U.S.C. § 105(a). Section 105(a) of the Bankruptcy Code empowers bankruptcy courts to issue any "order, process, or judgment that is necessary or appropriate to carry out the provisions of this title [which is title 11 of the United States Code]." 11 U.S.C. §105(a).

It is evident that court authorization for the trustee to seek a QDRO is an "order, process, or judgment" under Section 105(a) of the Bankruptcy Code. Moreover, ERISA, by virtue of Section 1144(d), does not write Section 105(a) of the Bankruptcy Code out of existence. In fact, ERISA does the opposite— namely it plainly states that ERISA does not "alter, amend, modify, invalidate, impair, or supercede any law of the United States." See 29 U.S.C. § 1144(d). ERISA therefore does not preclude the ability of a bankruptcy trustee to seek the entry of a QDRO if the bankruptcy trustee has succeeded to the debtor's pension plan interests by operation of law. At least on this basis, the trustee has standing to pursue the Motion to Execute QDRO.[4]

**IV.**

---

[4] Federal courts have an independent duty to examine their subject matter jurisdiction at all stages of litigation. See e.g., U.S. Express Lines v. Higgins, 281 F.3d 383, 388-389 (3d Cir. 2002); see also Mich. Emp't Sec. Comm'n v. Wolverine Radio Co., (In re Wolverine Radio Co.), 930 F.2d 1132, 1137 (6th Cir. 1991). Included in this independent duty is the examination of standing of the parties. See Burcena v. Bank One, Civ. No. CV 06-00422 (D. Haw. Oct. 1, 2007) citing FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 ("federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.'" )

Finding as a legal matter that a bankruptcy trustee could succeed to a debtor's interest as an "alternate payee" or "beneficiary" under ERISA does not necessarily translate to the entry of an order granting the Motion to Execute QDRO. The Court reaches this conclusion because the Court has some concerns regarding the chapter 7 trustee's standing to liquidate the pension interests awarded to Ms. Dively.

The record reflects that the debtor's equitable distribution claim between the debtor and her ex-husband, Sean Dively, was settled in 2011— which was prior to the bankruptcy petition date of February 22, 2012. The marital settlement agreement between Bobbi Jo S. Dively and Sean Dively provided that the debtor was awarded a 50% interest in Sean Dively's FedEx pension, and that the pension award to Ms. Dively was incorporated into an order of the state court dated October 11, 2011— again, well prior to the commencement of Ms. Dively's bankruptcy case.

The preceding undisputed facts therefore reflect that Ms. Dively had a vested pre-petition interest in the FedEx pension, see Crawford v. Hertzberg (In re Hertzberg), Adv. No. 14-214, 2014 WL 6382951 at *4 (Bankr. W.D. Pa. Nov. 13, 2014), and the trustee has accepted the present value of her interest as being $77,646.39 as of the petition date.

That Ms. Dively owned a vested interest in the pension prior to the bankruptcy filing is important relative to any competing claims of the bankruptcy trustee. This conclusion is evident because the law provides that Ms. Dively's

interest in the pension may, under the right set of circumstances, defeat any claim of ownership that is made by the trustee. For example, in Patterson v. Shumate, 504 U.S. 753 (1992), the U.S. Supreme Court held that retirement plans containing a legally enforceable "anti-alienation clause" are not "property of the estate" pursuant to 11 U.S.C. § 541(c)(2). In addition, as set forth in 11 U.S.C. §§ 522(b)(3)(C)[5], 522(d)(10)(E)[6] and 522(d)(12)[7], debtors in bankruptcy have the

---

[5] Section 522 (b)(3)(C) of the Bankruptcy Code states, in relevant part, that:

(b) Notwithstanding section 541 . . . an individual may exempt from property of the estate the property listed in . . . paragraph (3). . . .
    (3) Property listed in this paragraph is
        (C) retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under . . . the Internal Revenue Code of 1986.

See 11 U.S.C. §522(b)(3)(C).

[6] Section 522(d)(10)(E) of the Bankruptcy Code states:

(d) The following property may be exempted under subsection (b)(2) of this section:
    (10) The debtor's right to receive —
        (E) a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor . . .

See 11 U.S.C. §522(d)(10)(E).

[7] Section 522(d)(12) of the Bankruptcy Code states:

(d) The following property may be exempted under subsection (b)(2) of this section.
    (12) Retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under . . . the Internal Revenue Code of 1986.

(continued...)

right to exempt from the reach of the bankruptcy trustee various retirement funds and pension plan assets.

The net effect of the operation of Sections 541(c)(2), 522(b)(3)(c), 522(d)(10)(E) and 522(d)(12) of the Bankruptcy Code, and the U.S. Supreme Court's decision in Patterson v. Shumate, supra., is that retirement funds in some instances may be outside the ambit of "property of the estate." See e.g. Rousey v. Jacoway, 544 U.S. 320 (2005).

Simply stated, if Ms. Dively's pension interests fall under the umbrella of 11 U.S.C. §§ 541(c)(2), 522(b)(3)(C), 522(d)(10)(E) or 522(d)(12), the assets would be excluded from "property of the estate" and the trustee in this case may not make any claim to the assets for the benefit of creditors. See Nelson v. Ramette (In re Nelson), 322 F.3d 541 (8th Cir. 2003). Rather, Ms. Dively may retain such funds to augment her fresh start after her bankruptcy case is administered and closed.

The Court would further note that this case stands in contrast to the cases of Walsh v. Burgeson (In re Burgeson), 504 B.R. 800 (Bankr. W.D. Pa. 2014) and Walsh v. Urmann (In re Urmann), supra. In both Burgeson and Urmann, the trustee was permitted to recover pension or retirement funds titled in the name of the non-debtor ex-spouse only. The reason why the trustee in those cases was permitted to liquidate the assets was because the debtors in Burgeson and

---

[7](...continued)
See 11 U.S.C. §522(d)(12).

Urmann had no prepetition vested right to the pension or retirement interests at issue. This conclusion in Burgeson and Urmann was supported by the fact that the debtors in those cases had neither a QDRO issued in their favor, nor were they parties to a marital settlement agreement (or order of court) that provided for the equitable distribution of the retirement accounts to them as of the filing of their respective bankruptcy cases. As a result, the debtors in Burgeson and Urmann merely had a claim for equitable distribution as of the commencement of their bankruptcy cases. It was these claims for equitable distribution that were liquidated by the chapter 7 trustees in Burgeson and Urmann because, under the facts of those cases, such causes of action were not exempted or excluded from property of the bankruptcy estate under applicable law.

The matter *sub judice* stands on different footing than Burgeson and Urmann because this case involves a pre-bankruptcy vested interest by Ms. Dively in the pension plan. That interest was vested by operation of the marital settlement agreement, which was, in turn, incorporated into the prepetition divorce decree.

Since her property interest is an interest in an ERISA qualified pension plan, Ms. Dively's interest in the FedEx pension is conceivably outside the scope of "property of the estate." If Ms. Dively's interest in the pension is superior to the interest of the chapter 7 trustee, the chapter 7 trustee has no claim at all to the assets at issue. Such a consequence implicates the ability of the trustee to prosecute the Motion to Execute QDRO because, absent an interest in the FedEx

plan assets, the trustee would lack either an "injury in fact" or a sufficient "personal stake" in the outcome of this proceeding so as to warrant the invocation of this court's limited federal subject matter jurisdiction. See In re Hertzberg, supra., at *1-*5. It therefore appears on its face that the determination of the Motion to Execute QDRO should be deferred until such time as the trustee demonstrates that he has standing to liquidate Ms. Dively's pension interests.

**V.**

The Court recognizes that the debtor has not yet claimed an exemption in the pension, and therefore the applicability of Section 522 of the Bankruptcy Code to the pension interests of the debtor may not be ripe at the present moment. The fact that the debtor not taken an exemption under Section 522 of the Bankruptcy Code, however, does not obviate the application of 11 U.S.C. § 541(c)(2) and the holding of Patterson v. Shumate and its progeny to this case. Therefore, whether Ms. Dively's interest is not "property of the estate" remains to be determined.

In this regard, the Court would note that 11 U.S.C. § 541(a)(7) provides that property of the estate includes any "interest in property that the estate acquires after the commencement of the case." It does not appear that this provision of the Bankruptcy Code is applicable because the Motion to Execute QDRO does not cite any agreement by Ms. Dively to convey her pension interests to the trustee.

Of course, the record does reflect that the U.S. Trustee filed a complaint for revocation of the discharge of Ms. Dively for her failure to schedule the FedEx pension. See Adv. No. 13-7017JAD. But, that complaint of the U.S. Trustee was

withdrawn, no settlement motion was filed pursuant to Fed. R. Bankr. P. 9019, and the Court is unaware of the existence of any agreement by Ms. Dively to convey her interest in the proceeds of the FedEx pension to the trustee pursuant to 11 U.S.C. § 541(a)(7).

A fair reading of the trustee's Motion to Execute QDRO is that the trustee is asserting a claim to the pension because it was not scheduled by the debtor. In essence, the trustee alleges in the Motion to Execute QDRO that the debtor wrongfully failed to disclose the asset and the consequence is that the trustee can now surcharge the asset because the debtor somehow forfeited her interest in the same.

The Court has not found any persuasive authority supporting the trustee's position. In fact, the Court's own research leads it to conclude that such a surcharge of exempt assets by a trustee has been rejected by the United States Supreme Court.

In <u>Law v. Siegel</u>, 134 S. Ct. 1188 (2014),[8] the Supreme Court found no basis for a "surcharge" of exempt assets by a bankruptcy trustee as such relief is not

---

[8] The facts of <u>Law v. Siegel</u> dealt with the trustee's attempted surcharge of assets exempt under 11 U.S.C. § 522. The issue in Ms. Dively's case is whether her interest is outside "property of the estate" by operation of both 11 U.S.C. §541(c)(2) and the holdings of cases like <u>Patterson v. Shumate</u> and its progeny. That <u>Law v. Siegel</u> case dealt with "exempt" assets, and this case deals with assets that are arguably not "property of the estate," is a distinction without a difference. The Court reaches this conclusion because "exempt" assets are excluded from being "property of the estate." In addition, none of the provisions of the Bankruptcy Code authorize the involuntary forfeiture or surcharge of non-estate assets as contemplated by the trustee's Motion to Execute QDRO.

contained in the substantive provisions of the Bankruptcy Code. The Law v. Siegel Court reached this conclusion even though the debtor wrongfully and improperly failed to disclose the asset at issue because the bankruptcy court's equitable powers can only be exercised within the confines of the Bankruptcy Code. According to the U.S. Supreme Court, the consequences for a debtor failing to schedule an asset must lie in some other form of sanction (i.e., dismissal of the case, denial of discharge, monetary sanctions under Fed.R. Bankr. P. 9011, etc.), and not the forfeiture or surcharge of the undisclosed asset. Given the holding in Law v. Siegel, the trustee must demonstrate an independent basis for claiming that the pension interests are property of the estate before the Court can entertain the Motion to Execute QDRO.

## VI.

Making matters more difficult in this case is the fact that counsel to the debtor previously withdrew from his representation of the debtor. Ms. Dively has therefore been left unrepresented in these proceedings, even though she previously filed a letter with the Court (and reiterated in the hearing on counsel's motion to withdraw) that (a) she disclosed to counsel her pension interests for inclusion in the bankruptcy schedules and (b) she made all disclosures required by law.

Given her unrepresented status, it is not surprising that the debtor filed no papers in opposition to, or in favor of, the trustees Motion to Execute QDRO. The Court wonders whether Ms. Dively truly understands the nature of the trustee's

motion, and the consequences of the relief sought by the trustee if it were granted (i.e., that the trustee is seeking to cut-off the debtor's rights to her marital share of the FedEx pension). Ms. Dively certainly should be afforded an opportunity to be heard given the value of the assets in question and the unique circumstances of this case.

For all of the reasons set forth above, a rule to show cause shall be issued as to whether the pension interests of Ms. Dively should be excluded from property of the estate and whether the Motion to Execute QDRO should be denied for lack of standing by the chapter 7 trustee. At such rule hearing, both the debtor and the trustee shall be afforded an opportunity to be heard with respect to the issues highlighted by this *Memorandum Opinion.*

Applicable law does not authorize the Court to appoint counsel for the debtor. See e.g., In re Parker, No. 12-10684, 2012 WL 4021144 (Bankr. D. Vt. Sept. 11, 2012). Consequently, Ms. Dively is encouraged to seek the assistance of counsel given the complexity of these matters.

An appropriate order shall be issued.


December 4, 2014                       /s/  Jeffery A. Deller
                                       Jeffery A. Deller
                                       Chief U.S. Bankruptcy Judge

Case Administrator to Serve:

Kevin Petak, Esq.,
  Counsel to the Chapter 7 Trustee

FILED
12/4/14 4:43 pm
CLERK
U.S. BANKRUPTCY
COURT - PGH

Ms. Bobbi Jo. S. Dively, *Pro Se*

Kenneth P. Seitz, Esq.,
   Former counsel to the Debtor

Timothy P. Palmer, Esq. and Colby Morgan, Esq.
   Counsel to FedEx Corporation as
   Plan Administrator to the FedEx Corporation
   Employees' Pension Plan

Office of the U.S. Trustee